UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

ARION ANTHONY and KARRY CALDERON,

                                 Plaintiffs,

                 -against-

CITY OF NEW YORK, New York Police
Department Sergeant JAMES LEE, individually,
and Police Officer SANGWOO LEE, individually,
JOHN AND JANE DOE Police Officers 1-5,

                                 Defendants.

------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

**JURY DEMAND**

5.      Plaintiffs demand a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

**PARTIES**

6.      Plaintiff Arion Anthony (hereinafter "Mr. Anthony") is a citizen of Queens County in the State of New York.

7.      Plaintiff Karry Calderon (hereinafter "Ms. Calderon") is a citizen of Queens County in the State of New York.

8.      Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

10.      Defendant Police Sergeant James Lee ("Sergeant James Lee"), at all times relevant herein, was a duly sworn officer, employee and agent of the NYPD and was acting under the supervision of said department and according to his official duties.  Sergeant James Lee is sued in his individual capacity.

11.     Defendant Police Officer Sangwoo Lee ("Officer Sangwoo Lee"), at all times relevant herein, was a duly sworn officer, employee and agent of the NYPD and was acting under the supervision of said department and according to his official duties.  Officer Sangwoo Lee is sued in his individual capacity.

12.     Defendants John and Jane Doe Police Officers 1-5 ("John/Jane Doe Defendants"), at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their duties.  John/Jane Doe Defendants are sued in their individual capacity.

13.     That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

14.     Each and all of the acts of the Individual Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

15.     On January 27, 2013, Mr. Anthony and Ms. Calderon were driving at approximately 8:00 a.m. in Ms. Calderon's vehicle in East Elmhurst, Queens.

16.     Sergeant James Lee and Officer Sangwoo Lee turned on their red and blue flashing lights and pulled the vehicle to the side of the road.

17.     Mr. Anthony and Ms. Calderon's vehicle's trunk had a broken latch which was visible to the casual observer. Despite the fact that the trunk was unable to lock, the trunk did not open on its own and required a person to open it.

18.     Defendants' first action after stopping the vehicle, before speaking to Mr. Anthony and Ms. Calderon, was to open the vehicle's trunk and search it without cause and without permission.

19.     Sergeant James Lee approached Mr. Anthony on the driver's side of the vehicle and Officer Sangwoo Lee approached Ms. Calderon on the passenger's side.

20.     Officer Sangwoo Lee opened the passenger door without explanation and ordered Ms. Calderon out of the vehicle. Officer Sangwoo Lee told Ms. Calderon to stand with her hands on the vehicle.

21.     As this was happening, Sergeant James Lee asked for Mr. Anthony's license and the vehicle's registration. Mr. Anthony provided the documents.

22.     Sergeant James Lee opened the driver's door without explanation and ordered Mr. Anthony to step out and to put his hands on the vehicle.

23.     When Mr. Anthony asked why, Sergeant James Lee asked if Mr. Anthony was resisting arrest, and Sergeant James Lee touched his gun. Mr. Anthony, who had not known that he was being arrested, complied with Sergeant James Lee's

directive.

24.     Sergeant James Lee ordered Officer Sangwoo Lee to handcuff Mr. Anthony, which Officer Sangwoo Lee did.

25.     Defendants made Mr. Anthony sit on the sidewalk.

26.     Sergeant James Lee stated, in sum and substance, that he thought that the car looked like it had been stolen.

27.     Mr. Anthony and Ms. Calderon stated that the vehicle was not stolen and that the address on the vehicle registration matched Ms. Calderon's address as shown on her ID.

28.     Sergeant James Lee refused to look at Ms. Calderon's ID.

29.     Sergeant James Lee searched the vehicle without legal justification and without asking or obtaining Mr. Anthony's or Ms. Calderon's permission.  Sergeant James Lee removed a tire iron from the vehicle.

30.     Mr. Anthony had a pocket knife in his pants pocket and told Sergeant James Lee and Officer Sangwoo Lee about the knife, which was lawful for Mr. Anthony to carry.

31.     Officer Sangwoo Lee retrieved the pocket knife from Mr. Anthony and stated that he would arrest Mr. Anthony for the knife.

32.     Offer Sangwoo Lee also told Mr. Anthony and Ms. Calderon that the reason he and Sergeant James Lee originally pulled the vehicle over was because it had

a broken headlight.  This was not true.

33.    Even if the vehicle had had a broken headlight, which it did not, N.Y.

V.T.L. § 375.2A provides that

> [e]very motor vehicle . . . driven upon a public highway
> during the period from one-half hour after sunset to one-
> half hour before sunrise or at any other time when
> windshield wipers are in use, as a result of rain, sleet snow,
> hail or other unfavorable atmospheric condition, and at
> such other times as visibility for a distance of one thousand
> feet ahead of such motor vehicle is not clear, shall display .
> . . at least two lighted head lamps on the front, one on each
> side, having light sources of equal power[.]

N.Y. V.T.L. § 375.2A.  On the day in question, the sun had risen at 7:10 AM and the

weather did not create special visibility problems.

34.    Sergeant James Lee and Officer Sangwoo Lee never compared the

vehicle registration address to the address shown on Ms. Calderon's ID.

35.    Sergeant James Lee placed Mr. Anthony in the police car and drove him

to the precinct.  Officer Sangwoo Lee drove Ms. Calderon's vehicle to the precinct.

Sergeant James Lee and Officer Sangwoo Lee left Ms. Calderon standing on the

sidewalk.

36.    Sergeant James Lee and Officer Sangwoo Lee sent their false statements

to the District Attorney's Office, causing Mr. Anthony to be charged with and

prosecuted for possession of a criminal weapon, disorderly conduct and a violation of

N.Y. V.T.L. § 3752A.

37.   Mr. Anthony pled not guilty.

38.   Mr. Anthony attended court between five and seven times over the next year.

39.   On November 18, 2013, a state court judge dismissed Mr. Anthony's charges.

40.   Mr. Anthony filed a complaint with the Civilian Complaint Review Board ("CCRB") with respect to Defendants' actions.

41.   On September 4, 2013, the CCRB's investigation substantiated Mr. Anthony's allegation that Sergeant James Lee had abused his authority when he searched the vehicle.

42.   Mr. Anthony suffered damage as a result of Defendants' actions. Defendants unconstitutionally deprived Mr. Anthony of his liberty, invaded his privacy, damaged his reputation, caused him emotional distress and fear that manifested in physical ailments and more.  Mr. Anthony continues to suffer these damages.

43.   Ms. Calderon suffered damage as a result of Defendants' actions as well. Defendants unconstitutionally deprived Ms. Calderon of her liberty, invaded her privacy, damaged her reputation, caused her emotional distress and fear that manifested in physical ailments and more.  Ms. Calderon continues to suffer these damages.

44.    All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

45.    The aforesaid incident is not an isolated incident.  The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.  As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals

and engage in a practice of falsification of evidence in an attempt to justify the false

arrest.

46.     The Honorable Jack B. Weinstein, United States District Judge for the

Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this
> [C]ourt, as well as knowledge of cases in other federal and
> state courts, has revealed anecdotal evidence of repeated,
> widespread falsification by arresting police officers of the
> [NYPD] . . . [T]here is some evidence of an attitude among
> officers that is sufficiently widespread to constitute a
> custom or policy by the [C]ity approving illegal conduct of
> the kind now charged.

Colon v. City of N.Y., 2009 WL 4263363, at *2 (E.D.N.Y).

47.     Former Deputy Commissioner Paul J. Browne, as reported in the press

on January 20, 2006, stated that NYPD commanders are permitted to set

"productivity goals," permitting an inference of such a custom or policy encouraging

deprivations of individuals' constitutional rights in cases such as this one.

48.     Defendant City of New York is thus aware that its improper training and

customs and policies have often resulted in a deprivation of individuals' constitutional

rights.  Despite such notice, Defendant City of New York has failed to take corrective

action.  This failure caused Individual Defendants in this case to violate Plaintiffs'

constitutional rights.

49.   Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

50.   All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

51.   All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

52.   The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

53.   Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or

rule of the respective municipality/authority, which is forbidden by the United States Constitution.

54.    As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### FIRST CLAIM
### 42 U.S.C. § 1983

55.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

56.    Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

57.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

58.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST AND UNREASONABLE SEARCH & SEIZURE

59.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

60.     Defendants violated the Fourth and Fourteenth Amendments because they arrested and/or detained Plaintiffs without cause.

61.     Defendants violated the Fourth and Fourteenth Amendments because they unreasonably searched and seized Mr. Anthony, Ms. Calderon and the vehicle.

62.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

63.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
## MALICIOUS PROSECUTION

64.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

65.     Defendants violated Mr. Anthony's right under 42 U.S.C. § 1983 to be be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

12

66.    Defendants' prosecution of Mr. Anthony constituted malicious prosecution in that there was no basis for Ms. Anthony's arrest, yet Defendants continued with malice with the prosecution, which was resolved in Mr. Anthony's favor.

67.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Anthony of his constitutional rights.

68.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Anthony sustained the damages hereinbefore alleged.

## FOURTH CLAIM
## DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL

69.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

70.    The Individual Defendants created false evidence against Mr. Anthony.

71.    The Individual Defendants forwarded false evidence to prosecutors in the District Attorney's Office.

72.    In creating false evidence against Mr. Anthony, and in forwarding false evidence to prosecutors, the Individual Defendants violated Mr. Anthony's

constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

73.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Anthony of his constitutional rights.

74.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Anthony sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## FAILURE TO INTERVENE

75.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

76.     Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

77.     Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

78.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

79. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## MONELL CLAIM

80. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

81. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

82. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

83. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited

to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

84. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiffs.

85. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE,** Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth and

Fourteenth Amendment rights of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

   C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

   D. Awards to Plaintiffs of the costs of this action, including reasonable attorneys' fees;

   E. Such further relief as this Court deems just and proper.

DATED:  November 5, 2015
     New York, New York


         /s
        Ryan Lozar
        305 Broadway, 9th Floor
        New York, New York 10007
        (310) 867-1562
        ryanlozar@gmail.com

        *Attorney for Plaintiff*